Well, welcome to what is our first day of court this week. Welcome to the 11th Circuit. Judge Voodoo and I are always in the Atlanta courthouse, but we're so pleased to have Judge Kidd travel all the way up from Florida to join us and discover that Atlanta is just as hot as Florida right now. Much to his chagrin, he might rethink these summer sittings in Atlanta. Although I don't know in the 11th Circuit that there's anywhere to go to escape this. Let me call the first case, Conte v. Hill. It is 24-10264 and 24-10265. Mr. Watts, when you are ready, please proceed. May it please the court, my name is Bill Watts. I'm here representing the Chapter 13 trustee for the Southern Bankruptcy Court for the Southern District of Alabama. In these Chapter 13 proceedings below, Your Honors, if I may put it in these terms, the Bankruptcy non-exempt settlement proceeds to the debtors. The heart might say the debtors ought to keep these post-petition personal injury settlements as compensation. However, it's clear under the law and the Bankruptcy Court agreed that under Waldron, these post-petition personal settlement proceeds are property of the estate and to the extent they increase the ability of the debtors to pay, they are available to pay the creditors. Your heart might say that these personal injury settlements haven't made the debtors have any increased ability to pay. As the Bankruptcy Court said, they give pain and suffering for consideration for these settlements and they're no better off, but Congress has clearly demonstrated that these payments are property of the estate unless exempt. Section 522 of the code contains a limited exemption. Is that really at issue here? I think that perhaps your side did a good job of trying to trigger the modification provision, but the Bankruptcy Court found that these individuals did not, first of all, gain substantial amount of money even from the original settlement and that based on their expenses, the awards were not really income or regular cash monthly payments in the regular course. Let me make sure I understand the question, Your Honor. First, let me simplify the question. What of the Bankruptcy Court's findings of fact related to the financial status of these individuals do you believe was erroneous and therefore resulted in an abuse of discretion? Your Honor, we do not dispute or take issue with the findings of fact of the Bankruptcy Court. What we're saying, Your Honor, is that the novel theory, the consideration theory that the Bankruptcy Court applied, in effect, renders the entire decision an abuse of discretion because he's applied an erroneous legal rule of law that's reviewed de novo by this court. If that theory is incorrect, then his analysis breaks down and like a tower of blocks of a Jenga puzzle, you pull that foundation block out and the whole tower collapses. Is that true, though? Because let's assume that on all the legal issues, you are 100% correct. At the end of the day, when we apply the statute that deals with modification, the standard of review is abuse of discretion and in your briefs, you don't really grapple much with God in which we emphasize a Bankruptcy Court's discretion to modify or not modify a Chapter 13 plan. How do you overcome the abuse of discretion at the end of the day, which is how the Bankruptcy Court ended its analysis? Yes, yes, Your Honor. Thank you for that question. The question of the discretion of the Bankruptcy Court is, first of all, and we've cited it in our standard of review, Your Honor, if the Bankruptcy Court applies an erroneous legal standard or legal rule to exercise that discretion, that's not within its discretion to use that kind of analysis. If you take that analysis away, Your Honor, the facts that are left to, I mean, he never made an analysis of the facts apart from that legal consideration rule. And so that's the first thing. The other, next thing to say about the discretion is that it's bounded, Your Honor, it's bounded by the ability to pay standard. And it's, you know, Congress's intent is that the creditors repay the debtor to the extent of their capability under Chapter 13, citing from In re Waldron. And in re... Well, that goes to my question about the findings of fact. I mean, I think Ms. Proffitt at the time had $600 from the settlement and Boutwell only about $19,000. And then they provided for the Bankruptcy Court all of the expenses, money that they had to borrow, et cetera. So again, what is it about those factual findings that you believe still suggest an ability to pay? Yes, Your Honor. Well, again, if we go to the facts and if we eliminate this, this error, this legal rule that the court applied, okay, and if we now look at the facts and try to analyze those facts based upon the ability to pay, which court, of course, the Bankruptcy Court never did that, Your Honor, without applying this rule. So, yeah, you appreciate that. Yes, sir. Yes, sir. Yes, ma'am. Okay, so if we go to the facts themselves, first of all, Your Honor, the question was whether or not these were substantial increases in their ability to pay. Again, we discussed this in the brief, Your Honor. The District Court's analysis in applying this substantial change in circumstances was rejected by this Court in In re Gwian, I believe, and so there's no substantiality requirement in the change. You can have any change in circumstances is sufficient to modify a plan. The other aspect about these expenses, Your Honor, is even if you look at the substantiality of these settlements, the Boutwell creditors doubled their dividend by this settlement. That's not insubstantial. Right, but we are focusing on the In re Gwian and the In re Waldron, and In re Gwian says nothing prevents a Bankruptcy Court from refusing to confirm a modified plan put before it, and then In re Waldron, in looking at the non-statutory ability to pay, said the modification is not required because the settlement proceeds did not substantially improve the debtor's financial condition, nor were they an unanticipated gain, which would increase their ability to pay. How are we not tracking that in this case? And how do you overcome the abuse of discretion standard? Okay, first of all, Your Honor, I'm not sure that that's what In re Waldron The Bankruptcy Court below. Okay, the Bankruptcy Court below. I'm sorry, what you're reading from. That's how the Bankruptcy Court in turn. I see, that's how, right, that's how the Bankruptcy Court applied its analysis here. I'm sorry, Your Honor. Yeah, that's all right. Sorry. Well, again, the facts, when you look at the facts, undisputed facts here, look at the facts here. What are those facts? What evidence is there that any portion of these settlement proceeds were necessary for their maintenance and support? Their expenses had not increased. All their expenses had been reimbursed. There was no loss of income that they testified to. Their schedules remained unchanged. All of their aspects of those settlements remained unchanged, and there was just the evidence and their own payments, Your Honor, for the rest of those plans were made. There's just no evidence. Finally, when you look at the evidence that was presented in the absence of that rule that the court applied, and you look at just the evidence, that's not sufficient as a matter of law to demonstrate it. So that getting back to the discretion issue, it cannot be the law, Your Honor, that discretion is simply an arbitrary, unlimited, unboundless choice that the Bankruptcy Court can make. There has to be some foundation in the record for that exercise. Do you agree with the testimony from the debtors that the Bankruptcy Court considered? I'm sorry? Do you agree with the testimony that the Bankruptcy Court considered from the debtors? Yes, Your Honor. There was testimony from the debtors about how they were using this money and the expenses they needed to incur after these incidents that led to the settlements, correct? I'm sorry, I couldn't quite hear you. Do you agree that there was testimony from the debtors about how they were using this money and how they incurred additional expenses based on the incidents that led to the settlements, right? All expenses related to this accident were reimbursed, Your Honor. I don't believe there's anything in the record to show that their expenses from these accidents were not reimbursed. There was evidence from Ms. Boutwell that she had damage, or her husband had damage to her mother's car while he was driving, unrelated to this, you know, to her accident. And so he couldn't, he had, so they had this $6,000 repair on her mother's car, and then she also talked about a $3,500 loan that her parents made her, but as we point out in our... Your Honor, can you say a final word? My point is, contrary to your assertion, there was evidence that the Bankruptcy Court could have considered, that the Bank did consider, to ground its decision. So again, I come back to the same point as my colleagues. I find it difficult to find an abuse of discretion here. Again, Your Honor, I guess my reply to that would be, it really is impossible to uphold a decision that is so founded upon, if you... I mean, he's making an analysis, Your Honor, that includes this consideration theory. If you take that away, you're looking and making that... I'm not going to focus on consideration theory, but there is more, it seems to me. Okay, but... And you have reserved five minutes for rebuttal. Yes, I have. So, I'm sorry to see that take over. Thank you. Yes, please go ahead, Your Honor. And you're going to sweep the podium, Mr. Harris? Yes. May it please the Court, it's a pleasure to appear before you today. My name is Lacey Robertson of Padgett and Robertson. I represent the appellees in the underlying Chapter 13 bankruptcy cases. The issue in this case boils down to the discretion of the bankruptcy judge. The trustee presents his argument that the court made a decision that was radical, unprecedented, novel, and that this ruling would prevent any settlement in this circuit from the ability to increase the percentage to the unsecured creditors if there's perhaps a settlement or some money to come into the case. That's not true. It didn't say that anytime there's a personal injury settlement, it goes to the debtors. No, Your Honor, I agree. We are not arguing that every personal injury settlement, that that money has to go to the debtors. The trustee wants an absolute rule that says if there's money, that money should go to the creditors regardless. 1329 is at its core discretionary. Chapter 13 plans have to be flexible because you are dealing with five years of payments, five years of life that happens. Life is not certain and the modification provisions are there for that reason. We have personal injuries that come up in cases. We have vehicles that are wrecked. We have natural disasters. We have job loss. We have job gains. Some debtors can pay more. We have medical issues. We have death. Life happens and the bankruptcy court has to serve as the gatekeeper. They have to balance what is the goal of the bankruptcy, which is to give these debtors a fresh start when they make all their payments, with that there is a fair distribution to creditors. Counsel, how are you as opposing counsel's argument, which seems to be the crux of his  Okay, abuse of discretion standard, end of the day, but when the bankruptcy court and district court are, according to opposing counsel, making all of these errors of law, the foundation upon which the ultimate modification decision was reached is flawed. The discretion of the judge is not unlimited. The modification still has to meet certain requirements. The plan still has to be feasible. The liquidation test has to be met, I would argue, at the time of what the liquidation was at the time. You have to give the creditors what they would give if you were in a Chapter 7. The court has to be able to look at the overall settlement and have a realistic expectation of these debtors. These debtors did not come out of these injuries completely pain-free. They did not come out of these injuries that they may not need future care. Ms. Batwell testified she was already disabled. She had to have surgery. She went through physical therapy. She still is in pain management. She had already had an existing injury, and when merchandise fell on her neck at Dollar is still suffering from that. Ms. Proffitt testified that she still had a scar on her nose. She needed the money to have that scar fixed. She had also testified she had had existing back pain, and now that back pain was worse. On the day that this money is available, they weren't completely done with these injuries. All we can do through the legal system is try to come up with a way to compensate the debtors, but they can't be made whole because they're going to deal with these injuries sometimes for the rest of their life. The trustee wants to penalize these debtors because they continued to make their plan payments. They know they did not amend their schedules. They still had a certain amount that they had to pay their creditors, and it's like the debtors are being penalized for making their plan payments every month, finishing their plan, struggling during that process, having to borrow money from family. That's what families do when somebody is hurt. You try to all gather around and see if you can help that family member. Let me ask you a question. On page 29 of the red brief, you say that the debtors did not experience an increase in their ability to pay except for the existence of the settlement proceeds. But isn't that the trustee's point? The settlement proceeds increase the debtors' ability to pay creditors, so according to the trustee, there was no basis for the bankruptcy court to deny the modification. How do you respond to that? Well, I think this court was clear in Gillian that nothing prevents the bankruptcy court from refusing to confirm a modified plan. If you take the settlement proceeds away, the debtors are still performing under their plan, and we have to look to the actual injury, and have to look to the actual circumstances, and have to look to these individual debtors. If these debtors are getting a huge settlement, an oversized verdict, where they can realistically pay off their creditors, that's a different situation. So if they had $1 million or $1.5 million, and all of the expenses you talk about still allowed them to retain $1 million, then maybe the trustee would be in a different position. But the small amounts at issue here, coupled with the expenses you identified, I guess speak to your point of inability to pay, assuming that's even the case. Yes, Your Honor. All right, Ms. Robertson, thank you. Thank you, Your Honor. And Mr. Mayer, you have nine minutes. Thank you, Your Honor. For the record, Thomas Moore is mayor of Herbert Smith Freehills Kramer, on behalf of AMACI, the National Consumer Bankruptcy Rights Center, and the National Association of Consumer Bankruptcy Attorneys, and in support of the debtors and appellees in this case. I came here to argue for the abuse of discretion standard. The court's questions show that further argument on that score, I do not think is necessary for me unless you have questions. I do wish to point the court, in connection with the questions that it has raised, to the final paragraph of the bankruptcy court's decision. The second reason modification is not required in these two cases is that the court specifically finds that the debtors here do not have an increased ability to pay, did not experience substantially improved financial conditions, and did not accrue a windfall or gain that would justify modifying the plan so that all non-exempt personal injury settlement proceeds should be paid to creditors on top of their confirmed plan payments. And then there's additional material, but the trustees' argument that there is some fundamental legal flaw in the trust, in the court's exercise of discretion in this case, I don't think is borne out by what the court actually found in its opinion, and this is something the district court relied on in affirming, although not on the first reason given by the bankruptcy court. I would submit, I again came to argue that the abuse of discretion standard tracks the language of Waldron and tracks the language of Gwinn, and your questions have already indicated that no further argument, I think, is needed on that score. I want to talk a little bit about an issue that I think is very important the trustee barely touches on, and that's the burden of proof. The trustee is the movement. The trustee bears the burden of proof. It's not sufficient for the trustee to say, oh, there was an increase in receipts, that's all I need to show, and then it's up to the debtor to disprove that an increase in receipts is an increase in the ability to pay. We live in an inflationary environment. People's salaries go up, and if an increase in receipts is all that's needed to show ability to pay, and if it then becomes the debtor's burden to mount a case against it, the burden of proof has substantially shifted, and that's really all that happened here, and the evidence in the record is that the court did take testimony. There is a $6,000 repair bill. There was a $3,500 family loan, and whether that loan is enforceable or not is really irrelevant. The issue is was Ms. Boutwell under serious financial strain, and you don't go to the bank of mom for $3,500 unless you really need it. The court was within its rights to look at those facts and say that's the basis for my discretion that there is no increased ability to pay, and I'm happy to yield back my time to my co-counsel, and I'm happy to answer any questions the court may have. Thank you. Ms. Watts, you have saved five minutes for a rebuttal. Well, just in quick response to Mr. Mayer's comments, what evidence, if any, did you present to rebut the evidence that the debtors put forward regarding their debts even related to the settlement? What did you put forward? Are you talking about Ms. Boutwell's loan and damage to the vehicle? Yes, so Judge Kidd emphasized there was testimony that you didn't challenge in terms of what they presented, and I'm asking in terms of the burden of proof, what evidence, if any, did you introduce to rebut their testimony? Yes, Your Honor. In terms of the burden of proof, the trustee has the burden to prove that there's an increase in the ability to pay by introducing evidence of the net settlement proceeds and other evidence that he introduced showing no change in the debtor's income or expenses as a result of the accidents. Now, the burden to show that the settlement proceeds were needed for the debtor's maintenance and support was on the debtor. That is, I've cited a number of decisions in my brief at pages 25, reply brief at 25-26 that show that the bankruptcy court looks. There's no way for us to do anything except ask, were your expenses increased, and then they are the only ones. They may say, yes, they were, and then we say, well, show it to us, and then they have the burden to show, in fact, that there was an increase. We're not in the position to show that. They're the only ones that have that evidence. The burden to show an increase in maintenance and support is upon them to do, and that ... You're saying your burden of proof is only to show that they've gotten more money from some source. That there's no other evidence, which we demonstrated, to show that there's been some expense related to the accident that's not been reimbursed, or that there has been a loss of income as a result of ... Those questions were asked, Your Honor, and we elicited testimony to that extent. I believe we met our burden of proof. The other question about these expenses, or I call them expenses, they're really post-petition claims as we discussed in our brief, but even if you add up the $3,500 and the $6,000, that doesn't come nearly to half of what the settlement proceeds were that were available to Ms. Boutwell. So even if you take those figures away, there ought to still have been something left for the creditors to share in on those settlement proceeds. They just simply don't justify the complete loss of those settlement proceeds. Again, I want to emphasize, Your Honors, that Congress made it very clear in the 2005 amendments that they were attempting to limit judicial discretion and they were trying to maximize the payment to creditors from the debtors to the extent of their ability to do so. We believe that kind of standard of the congressional intent behind these amendments needs to be considered when you're looking at whether or not these debtors had an increased ability to pay their debts. Again, looking at that evidence, Your Honor, and he read from the decision. I think, again, I'll read from the decision. You can look, everybody can read from the decision. It's clear at a minimum that the consideration rule that nobody's attempting to justify was a very fundamental part of his analysis. At the minimum, the case should be reversed and sent back to the judge to look again at that evidence based upon his discretionary view without the use of that novel theory. What about the fact that the bankruptcy court, as Counsel for Amici just read out loud, said, and my second reason is, there's a separate reason. Yes, Your Honor, and when I read that separate reason, his first sentence after his saying he finds the debtors do not have an increased ability to pay, do not experience substantially accrued condition, do not accrue a windfall or gain that would justify modifying the plans, both debtors testified that they are still experiencing pain and other issues as a result of their injuries. They gave correctly viewing the post-petition personal injury as assets the debtors have already given substantial value, even if non-monetary, for the assets in the form of pain and suffering. That's part of his second analysis, Your Honor. That second analysis still applies this rule that nobody has attempted to justify. I don't think that the court ever looked at just the evidence of whether or not they experienced an increased ability to pay without, if you will, poisoning that analysis by the use of this consideration theory. I see that my time is up. Thank you very much. Thank you. Thank you. Our second case is